IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CARI ROBISON,<br><br>    Plaintiff,<br>v.<br><br>7PN, LLC and JEFFREY GREEN,<br><br>    Defendants. | **ORDER AND**<br>**MEMORANDUM DECISION**<br><br>Case No. 2:21-cv-00308-TC<br><br>District Judge Tena Campbell |

  Plaintiff Cari Robison brings this suit against Defendants 7PN, LLC and Jeffrey Green, alleging violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227.[1] Both Defendants have moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the court DENIES the Defendants' motion to dismiss.

## FACTS[2]

  Mr. Green is the founder and owner of 7PN (short for 7 Point Nutrition). 7PN is a Utah-based business that provides health and nutrition coaching and sells nutritional supplements. At some point in the past, 7PN obtained Ms. Robison's cell phone number. Once it had her number, 7PN sent Ms. Robison fourteen promotional text messages between May 2018 and September 2019. These text messages advertised 7PN's nutritional supplements and invited the recipient to purchase the supplements. In sending these telemarketing messages, 7PN allegedly employed what is known as an Automatic Telephone Dialing System (ATDS)—"equipment which has the capacity . . . to store or produce telephone numbers to be called, using a random or sequential

---

[1] The TCPA is an anti-abusive-telemarketing law. See Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021).

[2] All factual allegations come from Ms. Robison's complaint. The court accepts them as true for the purposes of this order. See Albers v. Bd. of Cnty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014).

number generator[,] and to dial such numbers." 47 U.S.C. § 227(a)(1). Ms. Robison alleges that she never consented to receiving these promotional text messages from 7PN, and that by receiving these messages she suffered "invasion of privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion," as well as "inconvenience[]" and "disruption." (Am. Compl. ¶ 22, ECF No. 15.) Two months after Ms. Robison received the final message from 7PN,[3] she added her phone number to the National Do Not Call Registry, a federal anti-telemarketing phone number database created in 2003. In April 2021, she sued 7PN under the TCPA, bringing a single cause of action for multiple violations of 47 U.S.C. § 227(b).

Ms. Robison originally brought her case in the Fourth Judicial District Court for Utah County, Utah. The Defendants filed a timely notice of removal in May 2021, invoking the court's federal-question jurisdiction. (ECF No. 2.) A few weeks later, Ms. Robison amended her complaint, adding new facts and a second cause of action for multiple violations of 47 U.S.C. § 227(c). (ECF No. 15.) Now the Defendants have moved to dismiss the entire action. (ECF No. 20.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint "must plead facts sufficient to state a claim to relief that is plausible on its face." Slater v. A.G. Edwards & Sons, Inc., 719 F.3d 1190, 1196 (10th Cir. 2013) (internal quotation marks omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is facially plausible when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Burnett v. Mortg. Elec. Registration Sys., Inc., 706 F.3d 1231, 1235

---

[3] As is standard with most SMS short code marketing text messages using an ATDS, replying "STOP" will unsubscribe the user from all future messages. Ms. Robison did just that, though it is unclear when she unsubscribed. Presumably, it was around September 21, 2019, the date of the final 7PN text message.

2

(10th Cir. 2013) (quoting Iqbal, 556 U.S. at 678). The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Albers v. Bd. of Cnty. Comm'rs, 771 F.3d 697, 700 (10th Cir. 2014). The court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." Sutton v. Utah Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting Miller v. Glanz, 948 F.2d 1562, 1565 (10th Cir. 1991)).

## ANALYSIS

In her complaint, Ms. Robison raises two TCPA claims against the Defendants: violations of 47 U.S.C. § 227(b) and violations of 47 U.S.C. § 227(c).

### I. Claims Against 7PN

As an initial matter, the Defendants argue that all claims against 7PN should be dismissed because 7PN did not exist as an entity at the time of the alleged violations. (See Mot. to Dismiss at 6, ECF No. 20.) In support, 7PN offers a copy of its certificate of organization. (See Mot. to Dismiss Ex. 1, ECF No. 20-1.) The parties disagree over whether the court can consider extrinsic evidence here, but it is clear that "'a court may take judicial notice of matters of public record outside the pleadings without converting a motion to dismiss' into a motion for summary judgment." Utah Gospel Mission v. Salt Lake City Corp., 316 F. Supp. 2d 1201, 1206 n.5 (D. Utah 2004). 7PN's certificate of organization, a matter of public record, confirms that it was not formed until January 2020. (See Mot. to Dismiss Ex. 1, ECF No. 20-1.) Apparently anticipating this response, Ms. Robison argues in her complaint that 7PN should be held liable under successor liability principles. So 7PN's prior nonexistence does not foreclose liability—there can be successor liability.

Some courts have held that arguments against successor liability "turn[] on an issue of fact that is inappropriate for resolution on a motion to dismiss." Fed. Hous. Fin. Agency v. Deutsche Bank AG, 903 F. Supp. 2d 285, 291 (S.D.N.Y. 2012). However, at a minimum, the court must be able to look at the complaint and "draw the reasonable inference that the defendant"—here, 7PN—"is liable for the misconduct alleged." Burnett, 706 F.3d at 1235. The court cannot make such an inference if Ms. Robison has not plausibly pleaded successor liability here, so the court must examine the issue.

In their filings, the parties agree that Utah law should control the issue of successor liability. This would be true if this were a case involving diversity jurisdiction. But because the Defendants invoked the court's federal-question jurisdiction in removing the case, the court is "not obligated to apply substantive state law or to employ a choice of law analysis to resolve the issue of what law governs successor liability." Flexicorps, Inc. v. Benjamin & Williams Debt Collectors, Inc., No. 06 C 3183, 2007 WL 3231425, at *3 (N.D. Ill. Oct. 30, 2007). With that said, the court chooses to apply Utah law here. LLCs and corporations alike are "'creatures of state law,' and state law is well equipped to handle" the issue of successor liability. Cf. Rodriguez v. FDIC, 140 S. Ct. 713, 718 (2020) (quoting Cort v. Ash, 422 U.S. 66, 84 (1975)) (holding that state law, and not federal common law, should determine issues of corporate property rights).[4]

---

[4] The Supreme Court has endorsed the FCC's administrative ruling that "federal common-law principles of agency" control in the vicarious liability context, Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 168 (2016) (citing In re Joint Petition Filed by Dish Network, 28 F.C.C. Rcd. 6574 (2013)), but no court has concluded that federal common-law principles apply to the successor liability context as well. The court declines to apply the federal-common-law analysis from Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 640 (1981) here. Suffice it to say, this is not a situation where "a federal rule of decision is 'necessary to protect uniquely federal interests.'" Id. (quoting Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 426 (1964)).

In general, when a predecessor company transfers its assets to a successor company, the successor is not liable for the debts or liabilities of the predecessor. There are four exceptions to this rule: (1) where the acquisition "is accompanied by an agreement for [the] successor to assume such liability," (2) where the acquisition "results from a fraudulent conveyance to escape liability for the debts or liabilities of the predecessor" (3) where the acquisition "constitutes a consolidation or merger with the predecessor" and (4) where the acquisition "results in [the] successor becoming a continuation of the predecessor." Tabor v. Metal Ware Corp., 2007 UT 71, ¶ 6, 168 P.3d 814, 816. Although Tabor is a products liability case, it quotes the same rule that the Tenth Circuit has used on other occasions. See Florom v. Elliott Mfg., 867 F.2d 570, 575 n.2 (10th Cir. 1989); R. J. Enstrom Corp. v. Interceptor Corp., 555 F.2d 277, 281–82 (10th Cir. 1977). For the fourth exception—the mere continuation exception—the court must analyze "not whether the 'business operation[s]' continued, but whether the 'corporate entity' continued. . . . A continuation demands 'a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer.'" Decius v. Action Collection Serv., Inc., 2004 UT App 484, ¶ 8, 105 P.3d 956, 959 (quoting Polius v. Clark Equip. Co., 802 F.2d 75, 86 (3d Cir. 1986) (Mansmann, J., concurring and dissenting)).

Ms. Robison argues that the mere continuation exception applies here. Specifically, she alleges the following facts:

> 7PN is the successor to Green acting in his individual capacity and doing business as 7 Point Nutrition. 7PN is merely a continuation of Green acting in his individual capacity and doing business as 7 Point Nutrition. Green is the sole owner of 7PN, just as he was when he was acting in his individual capacity or doing business as 7 Point Nutrition. Upon information, there were no changes to the way in which Green operated his business following registration of 7PN as a Limited Liability Company. 7PN is liable for acts committed by Green acting in his individual capacity and doing business as 7 Point Nutrition.

5

(Am. Compl. ¶¶ 9–13.)  The Defendants call these allegations "formulaic," "conclusory," and "insufficient."  (Mot. to Dismiss at 8–9, ECF No. 20; Reply at 9, ECF No. 25.)

Ms. Robison has plausibly pleaded successor liability here.  She clearly articulates that Mr. Green is 7PN's sole owner, he was the sole owner when he ran the business as "7 Point Nutrition" or in his individual capacity, and that nothing changed after 7PN was created.  (Am. Compl. ¶¶ 11–12.)  The Defendants urge the court to disregard any allegation made "upon information and belief," but the court rejects that notion.  Twombly and Iqbal's heightened standards do not prevent a plaintiff from pleading this way, "where the facts are peculiarly within the possession and control of the defendant."  Arista Recs., LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).  The knowledge about the way Mr. Green ran his business before and after he registered 7PN as an LLC is squarely within Mr. Green's possession.  Ms. Robison's allegations are therefore sufficient to enable the court to draw the reasonable inference that 7PN is liable for the telemarketing messages.[5]

## II.     Section 227(b) Claim

With plausible successor liability out of the way, the court turns to the two TCPA claims against the Defendants.  Section 227(b) of the TCPA makes it unlawful to "make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service."  47 U.S.C. § 227(b)(1)(A)(iii).  Text messages are considered calls in the TCPA.  Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016).  The TCPA creates a private right of action to enjoin violations of Section 227(b) and collect $500 in monetary damages per violation.

---

[5] 7PN is free to raise this issue again on summary judgment if it wishes.

§ 227(b)(3). Willful or knowing violations are punishable by treble damages—$1,500 per violation. Id.

Neither party debates whether the Defendants sent Ms. Robison text messages or whether they did so using an ATDS. Instead, because Section 227(b) does not apply if the called party gave "prior express consent" to be called, the parties' principal disagreement is over Ms. Robison's consent, if any, to receive those text messages. In her complaint, she alleges that she "never provided consent to receive telemarketing calls" from the Defendants. (Am. Compl. ¶ 17.) But the Defendants argue that Ms. Robison "cannot create a claim by failing to admit or address an issue that is implicit to having a claim." (Mot. to Dismiss at 15, ECF No. 20.) In their view, Ms. Robison must have alleged a lack of consent as part of her claim, and because she provided her phone number to the Defendants in the first place, she did consent. (Id. at 16.) Ms. Robison contends that consent is an affirmative defense, not a part of her prima facie TCPA claim, and she also asks the court to disregard the Defendants' exhibit purporting to show her name and phone number in their user database. (Opp'n to Mot. at 5–6, ECF No. 21.) No matter, the Defendants reply, this affirmative defense is "clear from the face of the complaint," so dismissal is appropriate. (Reply at 10, ECF No. 25.)

Although the Tenth Circuit has not decided this issue, several other circuits have. For example, the Ninth Circuit has held that "[e]xpress consent is not an element of a plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1044 (9th Cir. 2017) (citing In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 F.C.C. Rcd. 559, 565 (Jan. 4, 2008)). The First and Eleventh Circuits concur in this view. See Breda v. Cellco P'ship, 934 F.3d 1, 5 n.4 (1st Cir. 2019); Murphy v. DCI Biologicals Orlando, LLC, 797 F.3d 1302,

7

1304–05 (11th Cir. 2015). But the Eighth Circuit has reserved judgment on the issue, calling the issue "irrelevant to the Rule 12(b)(6) inquiry under Iqbal." See Zean v. Fairview Health Servs., 858 F.3d 520, 525 (8th Cir. 2017) (2–1 decision). A sister district court in Colorado quoted Van Patten and held that consent is a combination of a standing and a merits-based question. Montanez v. Future Vision Brain Bank, LLC, No. 20-CV-02959-CMA-MEH, 2021 WL 1697928, at *6 (D. Colo. Apr. 29, 2021) (to be published in F. Supp. 3d). Because the plaintiff had indeed alleged that she had not consented, the Montanez court accepted the allegation as true and denied the motion to dismiss. Id. at *6 n.3.

So too here. Ms. Robison's complaint clearly states that she did not consent to receiving text messages, and although the Defendants attempt to challenge that allegation by showing that her name and phone number were in their database, the court will not look to the presented evidence in ruling on the Defendants' motion. (See Mot. to Dismiss Ex. 2, ECF No. 20-2; Ex. 3, ECF No. 20-3.) These exhibits are unlike 7PN's certificate of organization, which is a matter of public record. Screenshots of an email message and of a Facebook page are not indisputable evidence of Ms. Robison's consent. If Ms. Robison's phone number were in the Defendants' database, that would not mean that she consented to receiving promotional text messages. Such a leap in logic would be inappropriate to make at the motion to dismiss stage, where the court accepts "all well-pleaded allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." Albers, 771 F.3d at 700.[6] The proper time to raise this issue is at summary judgment, where the court can review submissions from both sides and weigh the evidence. Consequently, the court declines to convert the motion into one for summary

---

[6] Also, these exhibits are not referenced in the complaint, and Ms. Robison disputes their authenticity. (Opp'n to Mot. at 12 n.5, ECF No. 21.) See Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007); Waller v. City & County of Denver, 932 F.3d 1277, 1282–83 (10th Cir. 2019).

judgment and will exclude from consideration the Defendants' other exhibits. Ms. Robison has plausibly alleged that the Defendants violated Section 227(b) by sending her unwanted text messages using an ATDS.

### III. Section 227(c) Claim

Section 227(c) of the TCPA is slightly different. Instead of directly proscribing certain telemarketing behaviors, it empowers the Federal Communications Commission (FCC) to make regulations to further "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." § 227(c)(1). The FCC adopted these regulations in 1992. See 57 Fed. Reg. 48333-01 (Oct. 23, 1992); 47 C.F.R. § 64.1200. The TCPA creates another private right of action to enjoin violations of the FCC regulations promulgated under Section 227(c), and like in Section 227(b), plaintiffs can seek up to $1,500 per violation. § 227(c)(5).

Because Section 227(c) merely authorizes the FCC to create regulations, Ms. Robison is really suing under the regulations. (See Am. Compl. ¶ 36.) Specifically, she cites 47 C.F.R. § 64.1200(d). (Id.) Section 64.1200(d) "relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls." Bailey v. Domino's Pizza, LLC, 867 F. Supp. 2d 835, 842 (E.D. La. 2012). That subsection opens with:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards[.]

§ 64.1200(d).[7] One of those "minimum standards" is that

---

[7] Despite using the language "residential telephone subscriber," this rule applies to wireless telephone numbers as well. § 64.1200(e).

> [a] person or entity making . . . any call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted.

§ 64.1200(d)(4). Ms. Robison invokes this specific rule as forming the basis for the Defendants' liability. Because in their marketing messages they did not provide her with "the name of the individual caller," the Defendants violated the regulation, and therefore the statute, giving her grounds to sue. (See Am. Compl. ¶¶ 36–37.)

A. Private Right of Action

Before taking up the complaint, the court must decide whether 47 C.F.R. § 64.1200(d)(4) violations are even actionable. The answer turns on whether Section 64.1200(d)(4) was promulgated under the FCC's authority in 47 U.S.C. § 227(c) or § 227(d), as Section 227(c) provides for a private right of action, but Section 227(d) does not. Judge Barlow previously held that it was Section 227(c) in Barrett v. Vivint, Inc., No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *7 (D. Utah May 20, 2020), while a judge in the Western District of Oklahoma concluded that it was Section 227(d) in Braver v. NorthStar Alarm Services, LLC, No. CIV-17-0383-F, 2019 WL 3208651, at *15 (W.D. Okla. July 16, 2019). There is a wide but fairly even split of authority among other courts on the issue.[8] While it is a close question, it appears that the FCC created this regulation under its authority in Section 227(c), not Section 227(d). The respective legislative and regulatory histories bear this out.

---

[8] Compare Charvat v. NMP, LLC, 656 F.3d 440, 449 (6th Cir. 2011); Rosenberg v. LoanDepot.com LLC, 435 F. Supp. 3d 308, 324–25 (D. Mass. 2020); Valdes v. Century 21 Real Estate, LLC, 2019 WL 5388162, at *3 (D.N.J. Oct. 22, 2019); Cunningham v. Rapid Response Monitoring Servs., Inc., 251 F. Supp. 3d 1187, 1200 (M.D. Tenn. 2017); Cunningham v. Nationwide Sec. Sols., Inc., 2017 WL 10486988, at *4 (N.D. Tex. Nov. 2, 2017); Wagner v. CLC Resorts & Devs., Inc., 32 F. Supp. 3d 1193, 1197 (M.D. Fla. 2014) (all concluding that it was Section 227(c)), with Wilson v. PL Phase One Operations L.P., 422 F. Supp. 3d 971, 982 (D. Md. 2019); Worsham v. Travel Options, Inc., 2016 WL 4592373, at *4 (D. Md. Sept. 2, 2016); Burdge v. Ass'n Health Care Mgmt., Inc., 2011 WL 379159, at *4 (S.D. Ohio Feb. 2, 2011) (all concluding that it was Section 227(d)).

The original version of Section 227(d) is nearly identical to the original version of Section 64.1200(d).  Compare Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394, 2400 (codified at 47 U.S.C. § 227(d)(3)), with Rules and Regulations Implementing the TCPA, 57 Fed. Reg. 48333, 48335 (Oct. 23, 1992).  However, in a 2003 rulemaking, the FCC shifted around some of the provisions in Section 64.1200; for example, it moved the 1992 version of Section 64.1200(d) to Section 64.1200(b).  See Rules and Regulations Implementing the TCPA, 68 Fed. Reg. 44144, 44163, 44178 (July 25, 2003).  The current version of Section 64.1200(d)—under which Ms. Robison sues—stems from the 1992 version of Section 64.1200(e).[9]  For these reasons, it appears that the current version of Section 64.1200(d) came from the FCC's authority given in Section 227(c).

In Barrett, Judge Barlow makes three points that weigh in favor of the operative statute being Section 227(c) and not Section 227(d).  First, Congress directed the FCC to, in its Section 227(c) rulemaking proceeding, "compare and evaluate alternative methods and procedures (including . . . industry-based or company-specific 'do not call' systems . . . ) for their effectiveness in protecting such privacy rights."  Barrett, 2020 WL 2558231, at *7 (quoting 47 U.S.C. § 227(c)(1)(A)).  The FCC's company-specific Do-Not-Call rules were put in Section 64.1200(e)—now Section 64.1200(d).  Second, it is an affirmative defense against a Section 227(c) lawsuit "that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection."  Barrett, 2020 WL 2558231, at *6 (quoting 47 U.S.C. § 227(c)(5)).  These procedures are outlined in what is now Section 64.1200(d).  Third, the purpose of Section 227(c)—protecting individual privacy rights—more closely

---

[9] Section 64.1200(d)(4) has not changed since 2003.

corresponds to Section 64.1200(d). The court finds these points persuasive and concurs with Judge Barlow. In conclusion, Section 64.1200(d)(4) violations are actionable through Section 227(c)'s private right of action.

B. The Complaint

Turning now to the complaint, Section 64.1200(d) delineates certain minimum Do-Not-Call List procedures for telemarketers, including the pertinent provision here, that telemarketers provide "the called party with the name of the individual caller." 47 C.F.R. § 64.1200(d)(4). But the Defendants assert that because Ms. Robison's phone number was not on a do-not-call list, she now lacks standing to sue. The court finds that Ms. Robison has standing to sue and that she has plausibly alleged that the Defendants violated Section 64.1200(d)(4).

1. Standing

To start, Ms. Robison has standing. There is no requirement in Section 227(c) or in Section 64.1200(d) that the plaintiff be on the National Do-Not-Call Registry or the company's internal list before she can sue. The Defendants quote the wrong provision in arguing that there is such a requirement. Ms. Robison is suing under Subsection (c) of the <u>statute</u>, but the Defendants quote Subsection (c) of the <u>regulation</u>, which does say that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c). However, Section 64.1200(c) is irrelevant here; Ms. Robison is suing for alleged violations of Section 64.1200(d)(4), a provision with no Do-Not-Call List prerequisite.

There would be two problems if the plaintiff had to be on the company's Do-Not-Call List before bringing a lawsuit. First, if that were so, there would seldom be anything over which to sue, as the company would have presumably ceased all communications with the plaintiff after

the plaintiff opted out.[10]  Second, if a telemarketing text message lacked any identifying information (and thus violated Section 64.1200(d)(4)), the recipient would be unable to figure out how to opt out of receiving future messages, and all the while the mysterious telemarketer could continue bombarding the consumer with spam texts with no fear of legal reprisal.  Such a holding would thwart Section 64.1200(d)(4), which is meant to aid consumers in stopping unwanted telemarketing calls and texts.  The administrative record supports this conclusion: "[A]dequate identification information is vital so that consumers can determine the purpose of the call, possibly make a do-not-call request, and monitor compliance with the TCPA rules." Rules and Regulations Implementing the TCPA, 68 Fed. Reg. 44144, 44163 (July 25, 2003).[11]  Despite having not opted out beforehand, Ms. Robison can still sue under Section 64.1200(d)(4).

    2.  Plausibility

Moving past standing, Ms. Robison has stated a claim to relief that is plausible on its face.  She asserts that none of the Defendants' text messages provided the "name of the

---

[10] The Defendants sent Ms. Robison the promotional text messages before she opted out of receiving future messages.  Her complaint acknowledges this.  (See Am. Compl. ¶ 20(c) ("[W]hen Robison eventually replied 'Stop[,]' she received an immediate and automated reply that said: 'You've been unsubscribed from ALL lists & won't receive any more messages.'" (emphases added)).)  She received fourteen messages and then opted out of receiving future messages (and in so doing added her name to 7PN's internal Do-Not-Call List).  Once she did this, 7PN followed its internal procedures (required by Section 64.1200(d)) and stopped sending her any unwanted messages.  Thereafter, she never received another regulation-violating text.

[11] The cases that seem to read into the regulation a Do-Not-Call List requirement do not go that far.  In Bailey v. Domino's Pizza, LLC, 867 F. Supp. 2d 835, 842 (E.D. La. 2012), the court stated that "Plaintiff does not allege that he made any such affirmative request [to opt out] to Defendant, and therefore it is not clear how the provision was violated."  The plaintiff had alleged a blanket violation of Section 64.1200(d) without anything more.  Here, Ms. Robison is much more specific in her allegations, even providing a text message in her complaint.  The court in Strange v. Doe #1, No. CV 19-1096, 2020 WL 2476545, at *4 (W.D. La. May 12, 2020) made a similar point, and for the same reason as above, Ms. Robison has specifically alleged a violation of Section 64.1200(d).  In Mestas v. CHW Group Inc., 508 F. Supp. 3d 1011, 1029 (D.N.M. 2020), the court stated that if the plaintiff had sued for violations of Section 64.1200(d), he "would need to allege facts to demonstrate how that subsection was violated, such as by stating 'that he made an affirmative request' for the defendants 'to stop calling him and to put him on a company specific do-not-call list.'"  By using the phrase "such as," the court provided the subsequent text as an example, not as a requirement in all cases.  For example, if a plaintiff alleged that the defendant had called him after he had opted out, of course he would first need to allege that he had made such a request.  Here, Ms. Robison has "allege[d] facts to demonstrate how" the Defendants violated Section 64.1200(d)(4).  In any event, that section of Mestas was entirely dicta, as the plaintiff did not actually base his claim on Section 64.1200(d).

13

individual caller." (Am. Compl. ¶ 36.) As an example, she offers the following text message: "BUY1-GET1 50% OFF SALE! Today ONLY @7 Point Nutrition. Some restrictions may apply. Call 801-617-1090 for phone orders!" (Id. ¶ 16.) This message does not contain the name of the person or entity behind the text. All it says is "7 Point Nutrition," which is apparently Defendants' doing-business-as (d/b/a) moniker. The FCC clarified that providing a d/b/a in a telemarketing message is permissible, but it is insufficient to fully comply with Section 64.1200(d)(4). See 68 Fed. Reg. at 44163 ("The Commission recognizes that some businesses use "d/b/as" or aliases for marketing purposes. The rule does not prohibit the use of such additional information, provided the legal name of the business is also stated.").[12] Because the Defendants failed to provide the "legal name of the business," they ostensibly violated the regulation. Therefore, Ms. Robison has plausibly alleged that the Defendants violated Section 64.1200(d)(4), and this claim can go forward.

## CONCLUSION

Ms. Robison has plausibly alleged that the Defendants violated the TCPA. Accordingly, **IT IS ORDERED** that the Defendants' motion to dismiss is DENIED.

DATED this 1st day of November, 2021.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
United States District Judge

---

[12] It is unclear whether "7 Point Nutrition" was ever the legal name of Mr. Green's business, but the Defendants do not argue as much.